# UNITED STATES DISTRICT COURT
# EASTERN DISTRIC OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

            Case Number 5:16-CR-20196-JEL-RSW-1

            Hon. JUDITH LEVY

OBIOMA  AGOMUOH

      Defendant.

_____/

ALDOUS BRANT COOK
U.S. Department of Justice
Criminal Division
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9756
Fax: (313) 226-5464
Email: brant.cook@usdoj.gov

LINDA AOUATE
U.S. Department of Justice
Criminal Division
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
Fax: (313) 226-5464
Email: linda.aouate@usdoj.gov

PATRICK J. HURFORD
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9553
Fax: (313) 226-2873
Email: Patrick.hurford@usdoj.gov

SANFORD A. SCHULMAN
Attorney for Defendant
OBIOMA AGOMUOH
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 963-4740
Email: saschulman@comcast.net

STEFANIE LAMBERT JUNTTILA
Attorney for Defendant
OBIOMA AGOMUOH
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 963-4740
_____/

## DEFENDANT, OBIOMA AGOMUOH'S MOTION FOR RESENTENCING AND REQUEST FOR EARLY RELEASE

NOW COMES the Defendant OBIOMA AGOMUOH, by and through his attorneys, SANFORD SCHULMAN, AND STEFANIE LAMBERT JUNTTILA, and states in support of Motion to Resentence Defendant and Request for Early Release as follows:

1.  February 26, 2018, the defendant, OBIOMA AGOMUOH, pled guilty to health care fraud in violation of 18 U.S.C. § 1347, and conspiracy to unlawfully distribute controlled substances in violation of 21 U.S.C. § 846. (R. 61, PgID 555-556).

2.  On January 19, 2019, this Court sentenced OBIOMA AGOMUOH to sixty (60) months in the Bureau of Prisons with three (3) years of supervised release, in addition to restitution. (R. 74, PgID 779-780).

3.  Mr. Agomuoh presented himself to FCI Morgantown in West Virginia on June 14, 2019.

4.  Mr. Agomuoh suffers from numerous chronic medical conditions including, but not limited to, unspecified hyperlipidemia, hypertensive heart disease without failure, atherosclerotic heart disease of native coronary artery, and atherosclerotic heart disease of native coronary artery without angina pectoris. Mr. Agomuoh's family reports an additional diagnosis of diabetes, bilateral osteoarthritis, and history of glaucoma. Mr. Agomouh is sixty-nine (69) years old. (Exhibit 1).

5.  Mr. Agomuoh's medical condition makes him a high risk for Coronavirus (COVID-19) because COVID-19 is particularly harsh on patients with cardiac problems, and diabetes. Dr. Agomuoh suffers from both.

6. Dr. Agomuoh respectfully requests that his sentence be modified pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) in light of the COVID-19 pandemic. Dr. Agomuoh is presently incarcerated at FCI Morgantown and the COVID-19 pandemic has required the BOP to suspend all visitation. As a result of both his medical status, should Dr. Agomuoh become infected he faces a substantial risk of suffering a severe form of the disease or even death. Indeed, as a result of his cardiac issues and diabetes he is in the highest risk category for complications and death from the disease. The defense maintains that the risk of COVID-19 poses to Dr. Agomuoh's health amounts to an "extraordinary and compelling" circumstance that warrants transferring Dr. Agomuoh to supervised release with special condition of home confinement for the duration of his sentence.

7. The Bureau of Prisons' website tracking COVID-19 confirms 799 federal inmates and staff who have confirmed positive tests results for COVID-19 nationwide. There have been 27 federal inmate deaths as a result of COVID-19 disease. (Exhibit 2).

8. As you are aware, COVID-19 is highly contagious and is spreading at a rapid rate. According to the World health Organization, the populations most at risk suffering a severe form of the disease include "[o]lder people, and those with underlying medical problems like cardiovascular disease [and

diabetes." (People Who Are at Higher Risk for Severe Illness, Centers for Disease Control and Prevention, Mar. 22, 2020, https://www.cdc.gov/coronavirus/2019-ncov/specific-groups/people-at-higher-risk.html). The CDC similarly has explained that individuals over the age of 65 and people of any age who have serious underlying medical conditions, including heart conditions, diabetes, and obesity are at higher risk for sever illness from COVID-19. Recently released data demonstrates that the risk is substantial. The CDC reports that approximately 80% of deaths from COVID-19 in the United States occur in individuals age or older, and that the fatality rate for individuals aged 65 to 84 could be as high as 11 percent. (Severe Outcomes Among Patients with Coronavirus Disease 2019 (COVID-19) – United States, February 12-March 16, 2020, Centers for Disease Control and Prevention, Mar. 26, 2020, https://www.cdc.gov/mmwr/volumes/69/wr/mm6912e2.htm. Additionally, within recently examined sample of COVID-19 patients in Italy, 73.8 percent of those who died from the disease suffered from hypertension; 33.9 percent suffered from diabetes).

9.  As numerous courts have recognized, "[t]he risk of contracting COVID-19 in tightly confined spaces, especially jails, is not exceedingly obvious." Basank v. Decker, 2020 WL 1481503, at 5 (S.D.N.Y. Mar. 26,

2020). One public health expert has explained: "If you wanted to set up a situation that would promote rapid transmission of respiratory virus, you would say prison it's close quarters, unsanitary, individuals in frequent contact." In such situations it is "nearly impossible to provide infection control." (Daniel A. Gross, "It Spreads Like Wildfire': The Coronavirus Comes to New York's Prisons," The New Yorker, Mar. 24, 2020. Other experts describe the possibility of "accelerated transmission and poor health outcomes of patients with COVID-19 in prisons and jails" as "extraordinarily high" due not only to the close quarters in which in inmates reside, but also the quality and quantity of available medical care and the fact that hundreds of individuals—from staff to new arrestee—enter and leave detention facility. (Brie Williams, COVID-19 in Correctional Settings, Mar. 22, 2019. http;//www.scrbd.com/document/452807558/NY-Press-Conference-Brie-Williams-Remarks). These dangers are not theoretical. During the COVID-19 outbreak in China prisons became hotbeds of infection despite stringent control measures, and press reports indicate that the same is now occurring at FCI Oakdale in Louisiana. (Zi Yang, "Cracks in the System: COVID-19 in Chinese Prisons," The Diplomat, Mar. 9, 2020, https://thediplomat.com/2020/03/cracks-in-the-system-covid-19-in-chinese-prisons/; Kimberly Kindy, "An Explosion of Coronavirus Cases Cripples

Federal Prison in Louisiana," Washington Post, Mar. 29, 2020, https://www.washingtonpost.com/national/an-explosion-of-cornavirus-cases-criplles-a-federalpriosn-in-lousiana/2020/03/29/75a465c0-71d5-11ea-85cb-8670579b863d_story.thml.) The CDC has recommended that high-risk individuals avoid crowds, keep space between themselves and others, and stay at home to avoid exposure to the virus. (Get Ready for COVID-19, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirsus/2019-ncov/specific-groups/get-ready.html.) Despite BOP's best efforts, it is impossible for Dr. Agomouh to practice "social distancing" to protect himself. In the FCI Morgantown facility inmates eat elbow-to-elbow at the same time, and share bathrooms, showers and stalls. Self-isolation is nearly impossible. In short, measures by the BOP cannot help but be insufficient.

10. Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that substantial and compelling reasons warrant such a reduction."

11.     18 U.S.C. § 3582(c)(1)(A)(i), the Court may "reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that substantial and compelling reasons warrant such a reduction."

12.     18 U.S.C. § 3582(c)(1)(A)(i) requires that an inmate exhaust his administrative remedies or wait for 30 days to lapse following his submission of a request for relief to the warden of his facility before seeking judicial relief.

13.     Under these exigent circumstances, however, requiring the 30-day period to pass before Mr. Agomouh could seek relief from the Court would be futile and only further endanger Mr. Agomouh's health.

14.     We respectfully submit that Mr. Agomouh's pre-existing health conditions in combination with the COVID-19 pandemic provide extraordinary and compelling reasons to modify his sentence to permit his immediate release to home confinement. See Basank, 2020 WL 1481503 at 5 (The spread of COVID-19 "is measured in a matter of a single day—not weeks, months, or years.").

15. Such action by this Court would not be unprecedented. As the number of COVID-19 cases has grown, courts have increasingly taken action to protect the health of at-risk inmates and detainees. See <u>United States v. Campagna</u>, 2020 WL 1489828 (S.D.N.Y. Mar 27, 2020)(modifying defendant's sentence to replace his outstanding term of imprisonment with an equal period of home incarceration); <u>United States v. Perez</u>, No. 19 Cr. 297 (PAE), Amended Order, Dkt. No. 62 (S.D.N.Y. Mar. 19, 2020)(temporarily releasing pre-trial defendant from custody during public health crisis); Coronel v. Decker, 2020 WL 1487274 (S.D.N.Y Mar. 27, 2020) (ordering plaintiffs' immediate release from ICE custody); Basank v. Decker, 2020 WL 1481503, at 7 (same).

16. Mr. Agomuoh makes this application knowing that the crimes he committed were serious. He understands that a substantial term of incarceration was appropriate. At the time the Court sentenced Mr. Agomouh, incarceration posed risk to his health and that was contemplated by this Honorable Court resulting in a prison placement at FCI Morgantown. In light of this unprecedented change in circumstances, we respectfully request that the Court exercise its power to modify Mr. Agomuoh's sentence and direct that he be released to home confinement to serve the remainder of his sentence.

WHEREFORE, the Defendant OBIOMA AGOMUOH, by and through his attorney, SANFORD A. SCHULMAN, AND STEFANIE LAMBERT JUNTTILA, and respectfully requests this Honorable Court enter an order resentencing Obioma Agomuoh to early release from federal prison for the reason so stated herein.

                                                Respectfully submitted,

                                                s/ Sanford A. Schulman
                                                Sanford Schulman
                                                Attorney for Defendant
                                                      OBIOMA AGOMUOH
                                                500 Griswold St. Ste 2340
                                                Detroit, MI 48226
                                                saschulman@comcast.net
                                                Phone: (313) 963-4740

                                                /s/ Stefanie L. Lambert Junttila
                                                Stefanie L. Lambert Junttila
                                                Phone: (313) 963-4740
                                                500 Griswold St. Ste. 2340
                                                Detroit, MI 48226
                                                Email:attorneystefanielambert@gmail.com
                                                Phone: (313) 963-4740

Date:        April 26, 2020

# UNITED STATES DISTRICT COURT
# EASTERN DISTRIC OF MICHIGAN
# SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

            Case Number 5:16-CR-20196-JEL-RSW-1

            Hon. JUDITH LEVY

OBIOMA  AGOMOUH

      Defendant.

_____/

ALDOUS BRANT COOK
U.S. Department of Justice
Criminal Division
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9756
Fax: (313) 226-5464
Email: brant.cook@usdoj.gov

LINDA AOUATE
U.S. Department of Justice
Criminal Division
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100
Fax: (313) 226-5464
Email: linda.aouate@usdoj.gov

PATRICK J. HURFORD
Criminal Division, Fraud Section
U.S. Department of Justice
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9553
Fax: (313) 226-2873
Email: Patrick.hurford@usdoj.gov

SANFORD A. SCHULMAN
Attorney for Defendant
OBIOMA AGOMUOH
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 963-4740

STEFANIE LAMBERT JUNTTILA
Attorney for Defendant
OBIOMA AGOMUOH
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 963-4740

BRIEF IN SUPPORT OF DEFENDANT, OBIOMA AGOMUOH'S MOTION FOR RESENTENCING AND REQUEST FOR EARLY RELEASE

NOW COMES the Defendant OBIOMA AGOMUOH, by and through his attorneys, SANFORD A. SCHULMAN, and STEFANIE L. LAMBERT, and state in support of his Brief in Support of his Motion to Resentence Defendant and Request for Early Release as follows:

I.  Should this Honorable Court resentence Obioma Agomuoh and release him early from his prison sentence because he has numerous, serious health conditions in light of the current pandemic?

Defendant answers. "Yes."
Plaintiff answers. "No."

## STATEMENT OF FACTS

Defendant Obioma Agomuoh pled guilty to health care fraud in violation of 18 U.S.C. § 1347, and conspiracy to unlawfully distribute controlled substances in violation of 21 U.S.C. § 846. (R. 61, PgID 555-556).

Defendant's current conditions of confinement are putting his health at risk. Defendant seeks immediate release from confinement as a result of here being no conditions of confinement sufficient to prevent irreparable injury. Defendant is currently serving out his fifty-two (52) month sentence at FCI Morgantown, in West Virginia. Defendant began his term on June 14, 2019 completing over nine (9) months to date. Subsequent to the prison term, Mr. Agomuoh is to complete three (3) years of supervised release.

Defendant Agomuoh has numerous health conditions including unspecified hyperlipidemia, hypertensive heart disease without failure, atherosclerotic heart disease of native coronary artery, and atherosclerotic heart disease of native coronary artery without angina pectoris. Mr. Agomuoh's family reports an additional diagnosis of diabetes, bilateral osteoarthritis, and history of glaucoma. Mr. Agomouh is sixty-nine (69) years old. (Exhibit 1).

ARGUMENT

Under the First Step Act, Mr. Agomuoh is eligible for reduced sentence due to his work and this Court can act sua sponte to adjust downwards Mr. Agomuoh's imposed sentence so that he is eligible for supervised release.

In addition, the public health recommendation is to release high-risk people from detention, given the heightened risks to their health and safety (ECF No. 6-1, PgID 87 (Declaration of Infectious Disease Epidemiologist Joseph Amon)). The only way to prevent serious illness including death is to release all people with low risk factors.

Mr. Agomuoh is housed in West Virginia and the Governor of West Virginia stated the following, "Whereas, due to the recent number of positive cases of COVID-19 in several areas of this state, Executive Order 20-20 and Executive Order 21-20 implemented further measures to protect the health, safety, and welfare of the public, to disrupt the spread of the virus, and to mitigate the impact of COVID-19 in particular counties of West Virginia, and Whereas due to the increase in the number of positive cases of COVID-19 in Marion County, it is necessary to implement similar heightened measures in this county as were included in Executive Order 20-20 and Executive Order 21-20" Executive Order, No. 22-20 (April 8, 2020).

A well-known medical professional, Dr. Greifingert, spoke on a similar issue but relating to ICE facilities. Dr. Greifingert had stated that the only way to "prevent serious illness including death" in ICE facilities is to "release all people with risk factors." (ECF NO. 20-3, PageID.374 (Declaration of Dr. Robert B. Greifingert). Same can be said about FCI Morgantown.

On March 23, 2020, the Center for Disease Control and Prevention (CDC) acknowledged that correctional and detention facilities "present unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff and visitors*." Interim Guidance on Management of Coronavirus Disease 2019* (COVID-19) *in Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correctiondetention/guidance-correctional-detention.html.[Hereinafter"CDC Guidance 3/23/2020"].

Specifically, the CDC has noted that many detention conditions create a heightened risk of danger to its inmates. Risks include low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congretional environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). Id.

The only adequate relief for Mr. Agomuoh is his release from confinement at FCI Morgantown. Social distancing, hygiene measures and proper diet are Mr. Agomouh's only defense against COVID-19. These protective measures are exceedingly difficult at FCI Morgantown, if not impossible. Mr. Agomouh shares toilets, sinks, phones, showers, and eats in communal spaces. He is in frequent, close contact with other inmates, and officers.

In addition, matters are only getting worse in facilities like FCI Morgantown. On April 1, 2020, the Rikers Island Jail complex's chief physician acknowledged that "infections are soaring" despite the facility's "following Center for Disease Control and Prevention guidelines and having moved mountains to protect patients." Miranda Bryant, *Coronavirus Spread at Rikers is a 'Public Health Disaster'. Says Jail's Top Doctor,* The Guardian (Apr. 1, 2020), https://www.theguardian.com/us-news/2020/apr/01/rikers-island-jailcoronavirus-public-health-disaster.

No matter what steps are taken at FCI Morgantown, Mr. Agomuoh is constantly at risk of his contracting COVID-19 during this pandemic. Absent an early release by this Court, Mr. Agomuoh has a high likelihood of irreparable harm in the form of loss of health or life should he contract COVID-19, if he has not already.

The United States Attorney General has issued a directive to consider early release for detainees who do not pose a public safety risk, as minimizing crowded populations is the only known way to mitigate spread of this pandemic. *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Atty Gen. (Mar. 26, 2020); Executive Order, No. 2020-29 (COVID-19) (Mar.26, 2020).

## CONCLUSION

Defendant Agomuoh current living conditions are putting his health at risk, and home confinement is a safer setting for him with his numerous health conditions including heart attack, hypertension, and diabetes.

Respectfully submitted,

/s/ Sanford A. Schulman
Sanford Schulman
Attorney for Defendant
    Obioma Agomouh
500 Griswold Street, Ste 2340
Detroit, MI 48226
saschulman@comcast.net
(313) 963-4740

/s/ Stefanie L. Lambert Junttila
Attorney for Defendant
    Obioma Agomouh
500 Griswold Street, Ste. 2340
Detroit, MI 48226
attorneystefanielambert@gmail.com

Date: April 26, 2020

<u>Certificate of Service</u>

I, Stefanie Lambert Junttila, attorney at law, certify that on April 26, 2020, I caused a copy of this pleading to be served upon the Clerk of the Court and Government via E-file.

<u>/s/ Stefanie Lambert Junttila</u><br>
Stefanie Lambert Junttila (P71303)